UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
UNITED STATES OF AMERICA,        :

                                :

           v.                      :      **MEMORANDUM & ORDER**
                                :      15-CR-558 (WFK)

CLARENCE JUNIOR ARTIS II,       :

                                :

                   Defendant.   :
-------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**

On March 13, 2017, Clarence Junior Artis II ("Defendant") pled guilty to two counts of an eight-count indictment for Conspiracy to Commit Commodities and Wire Fraud in violation of 18 U.S. Code §§ 1343, 1348, and 1349. The Court now sentences Defendant and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress and the President and contained in 18 U.S.C. § 3553(a). For the reasons discussed below, Defendant is hereby sentenced to 51 months of incarceration, 2 years of supervised release, an order of restitution in the amount of $736,694.21, and payment of a $200.00 special assessment.

## BACKGROUND

On October 28, 2015, the United States filed an Indictment charging Defendant with eight counts including access device fraud, aggravated identity theft, conspiracy to commit commodities and wire fraud, wire fraud, and commodities fraud. ECF No. 1. On March 13, 2017, Defendant pled guilty before this Court, pursuant to a plea agreement, to Count One, conspiracy to commit wire fraud, and Count Four, conspiracy to commit commodities and wire fraud, in violation of 18 U.S.C. §§ 1343, 1348, and 1349. *See* Plea Agreement, ECF No. 45.

The Court hereby sentences Defendant and sets forth its reasons for Defendant's sentence using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

## DISCUSSION

### I.    Legal Standard

18 U.S.C. § 3553 outlines the procedures for imposing a sentence in a criminal case.  If and when a district court chooses to impose a sentence outside of the United States Sentencing Commission Guidelines Manual (the "Guidelines" or "Sentencing Guidelines") range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2).  The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form."  *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)."  *United States v. Davis*, 08-CR-332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.) (internal quotation marks and citation omitted).  Section 3553(a) provides a set of seven factors for the court to consider in determining what sentence to impose on a criminal defendant.  The Court addresses each in turn.

### II.    Analysis

#### A. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant."  18 U.S.C. § 3553(a)(1).

Defendant was born on August 8, 1980, in Portsmouth, Virginia, to the marital union of Clarence Artis and Lelia (née Powell) Artis.  *See* Presentence Investigation Report ("PSR") ¶ 47, ECF No. 46.  The parents reside together in Franklin, Virginia.  *Id.*  The Defendant's father is employed as a security guard in a hospital and his mother is employed as a manager at a Nike

factory. *Id.* The Defendant reported that he has a good relationship with his parents. They are aware of his arrest and conviction for the instant offense and have remained supportive. *Id.*

Defendant is one of three children and was raised in an intact lower-middle income family in the Hampton Roads area of Virginia. *Id.* ¶¶ 48-49. His brother Terrance Artis resides in Watertown, New York, with his wife and one child, and is enlisted in the United States Army. *Id.* His second brother, Trenton Artis, is in school and resides with his parents. *Id.*

Defendant attended college in Atlanta, Georgia and remained in Atlanta until approximately 2008. *Id.* ¶ 49. Defendant did not complete his degree. *Id.* ¶ 57. Defendant married Deserae (née) Wilson in 2006. *Id.* ¶ 50. They lived in New York City from 2008 through 2011, moved back to Atlanta, and then ultimately to Orlando, Florida in 2015. *Id.* ¶ 49. Defendant's wife is employed as a forensic underwriter for an insurance company, and she enjoys good health. *Id.* ¶ 50. Defendant and his wife have one daughter, who was five years old at the time of the PSR. *Id.*

The Defendant reported to Probation employment in various industries, including as an independent contractor, a promoter in the music industry, and a computer engineer, from 2000 until his arrest for the instant offense. *Id.* ¶¶ 62-71

Defendant was housed at the Metropolitan Detention Center (MDC) in Brooklyn, New York, from December 1, 2015, through his bond release on July 15, 2016. *Id.* ¶ 52. He did not incur any disciplinary incidents during that time. *Id.* Defendant participated in tutor training, resume writing, parenting, and financial courses. *Id.*

Defendant reported enjoying good health and denied any history of serious medical issues or hospitalizations. *Id.* ¶ 54. Defendant has no history of mental or emotional health issues or substance or alcohol abuse. *Id.* ¶¶ 55-56.

In 2001, Defendant was arrested for the first time at the age of twenty in Georgia for driving while his license was suspended or revoked. *Id.* ¶ 39. He was arrested again in 2011 at the age of thirty for the same offense. *Id.* ¶ 40. Defendant was arrested again in 2013 for grand larceny in the third degree in Westchester County, New York, which is related to the instant offense. *Id.* ¶ 41. At the time of the PSR, Defendant's probation officer in Westchester County telephonically informed Probation that there was a pending violation lodged against the Defendant for failure to pay restitution. *Id.*

Between May 2010 and December 2010, the Defendant and a co-conspirator engaged in a fraudulent scheme whereby they convinced individuals with good credit history (the "Credit Victims") to become partners with a company controlled by the co-conspirator, thereby allowing the co-conspirator to obtain credit cards in the co-conspirator's name, but under the Credit Victims' accounts. *Id.* ¶ 9. Accordingly, the Defendant and the co-conspirator applied for credit cards using the Credit Victims' credit history with various financial institutions, including American Express, Synovus, Ameris Bank, and Citibank. *Id.* Thereafter, credit cards were issued in the co-conspirator's name co-signed under the Credit Victims' accounts, such that the Credit Victims would be liable for any unpaid charges. *Id.*

The Defendant recruited and/or contacted individuals to become business partners with the co-conspirator with the promise that they would allow the co-conspirator to use their credit history, under the ploy that this partnership would strengthen the Credit Victims' credit rating. *Id.* ¶ 10. To induce the Credit Victims to become partners with co-conspirator, the Defendant and the co-conspirator telephonically represented to the Credit Victims that they would pay for any charges on the accounts. *Id.* Contrary to these representations, the Defendant and the co-conspirator used all available credit on the credit cards and failed to make the necessary

4

payments. *Id.* Defendant and the co-conspirator used these credit card accounts for their own personal use, which included renting luxury vehicles and paying for entertainment at expensive clubs, hotels, and restaurants. *Id.* ¶ 11. It is noted that the Defendant stipulated in his plea agreement to a total real loss of $263,286.71 for restitution purposes for the Credit Victims. *Id.*

Between May 2008 and October 2012, the Defendant and the co-conspirator executed a fraudulent investment scheme through TAC Capital. *Id.* ¶ 14. TAC Capital's marketing brochure, disseminated to investors by the Defendant and the co-conspirator, falsely represented that: 1) TAC Capital had "over $345M ($345,000,000) in operating liquidity;" 2) investors would have "direct ownership of the invested asset, security, and/or funds;" and 3) TAC Capital's clientele was comprised of "[h]edge fund managers, corporate executives, entertainment executives, real estate professionals, physicians, and restaurant/hotelier/financiers, [and] venture capitalists." *Id.*

In furtherance of this scheme, the Defendant and the co-conspirator falsely told potential investors that: 1) TAC Capital traded on the foreign currency exchange market; 2) investors would receive a guaranteed return on their investments; and 3) TAC Capital had a partnership with Capricorn FX, now known as Capricorn Strategies, LTD (Capricorn), an established currency manager in Denmark. *Id.* ¶ 15. Contrary to these representations, TAC Capital did not trade on the foreign currency exchange markets and it did not have a partnership or agreement with Capricorn. *Id.* Moreover, the Defendant and the co-conspirator used almost all of the investors' funds for their own personal use and to pay off other unrelated investors. *Id.* It is noted that the Defendant stipulated in his plea agreement to a total real loss of $473,407.50 for restitution purposes. *Id.*

5

**B. The Need for the Sentence Imposed**

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The Court's sentence punishes Defendant for violating federal law and is crafted to deter him and others from engaging in similar criminal activity in the future. The Court takes into account Defendant's criminal history as well as his need for treatment for substance abuse.

**C. The Kinds of Sentences Available**

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pled guilty to Count One, conspiracy to commit wire fraud (the "Credit Card Scheme"), and Count Four, conspiracy to commit commodities and wire fraud (the "Investment Scheme"), of the indictment in violation of 18 U.S.C. §§ 1343, 1348, and 1349. For Count One, he faces a maximum term of imprisonment of thirty years because the offense affected financial institutions. 18 U.S.C. §§ 1343, 1349. For Count Four, he faces a maximum term of imprisonment of twenty-five years. 18 U.S.C. §§ 1348, 1349. He also faces: up to five years of supervised release, 18 U.S.C. § 3583(b); a maximum fine of $1,000,000 or twice the gross gain or loss, whoever is greater for Count One and a maximum of $250,000 or twice the gross gain or loss, whichever is greater for Count Four, 18 U.S.C. §§ 1343, 3571(b)(1) & (3), (d); and a mandatory special assessment of $200.00 ($100.00 per count), 18 U.S.C. § 3013.

6

**D. The Kinds of Sentence and the Sentencing Range Established For Defendant's Offense**

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines." 18 U.S.C. § 3553(a)(4)(A).

The guideline for violations of 18 U.S.C. § 1349 offenses is § 2X1.1(a) of the United States Sentencing Commission Guidelines Manual ("USSG"), which directs that the base offense level for the substantive offense, plus any adjustments from that guideline, be used. The guideline for the substantive offenses, fraud, is USSG § 2B1.1(a)(1) which provides a base offense level of seven, since wire and commodities fraud are referenced to this guideline and the statutory maximums are twenty years or more.[1] *See* USSG §§ 2B1.1(a)(1), 2X1.1(a) (Nov. 2016). The instant offenses involved an actual loss amount of $736,694.21, Plea Agreement ¶ 2; therefore, pursuant to USSG § 2B1.1(b)(1)(H), cmt. n.3, fourteen levels are added. The Defendant has demonstrated acceptance of responsibility for the offense and notified the Government in a timely manner of his intention to enter a guilty plea. Accordingly, the offense level is decreased by three levels pursuant to USSG § 3E1.1(a) & (b).

The parties disagree about what other adjustments should be made to Defendant's offense level. Probation argues that under USSG § 2B1.1(b)(2)(A), a two-level enhancement is warranted because the offense involved ten or more victims. The Government and the Defense agree that USSG § 2B1.1(b)(2)(A) applies, but because Defendant's crimes "resulted in substantial financial hardship to one or more victims," as memorialized in the Plea Agreement. Plea Agreement ¶ 2. Which rationale applies is important because USSG § 2B1.1(b)(2)(B)

---

[1] Pursuant to USSG § 3D1.3, a single calculation is performed for Counts One and Four.

provides that if the offense "resulted in substantial financial hardship to five or more victims, increase by 4 levels." Factors for determining whether victims incurred "substantial financial hardship" are outlined in comment 4(F) to USSG § 2B1.1(b)(2). The PSR lists actual losses from Defendant's Credit Card and Investment Scheme victims. PSR ¶¶ 10, 15. Given that nine of the victims sustained losses in the five or six figures, it is possible that a four-level increase actually applies. *Id.*

Probation advocates an adjustment for Defendant's role in the offense because he gave potential investors the appearance that he was an authorized foreign exchange trader. Addendum to PSR ("Addendum") ¶ 31. Probation's position on how many levels would apply under this adjustment is unclear. In the text of both the original PSR and the Amended PSR, Probation states, "[i]n furtherance of the fraud investment scheme, the defendant gave the potential investors the appearance that he was an authorized commodities trader, as such, a **2-level enhancement** is warranted for abuse of a position of trust, per USSG §3B1.3." PSR ¶ 31; Addendum ¶ 31 (emphasis added). However, in the calculation, Probation adds three levels for this adjustment. USSG § 3B1.3 does not provide for a three-level adjustment. The Defense contends neither a two- nor three-level adjustment applies here.

As stipulated in the Plea Agreement, the Defense and the Government also argue that a two-level adjustment applies under USSG § 2B1.1(b)(10)(C), because "the offense otherwise involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means, increase by 2 levels." Probation does not include this upward adjustment in their calculations.

Probation ultimately calculated the Defendant's offense level as 23. Addendum at 4. With a criminal history category of one, Defendant's guidelines sentence would be forty-six to

fifty-seven months. The Defense and Government calculate the offense level as 22. Plea

Agreement ¶ 2. With a criminal history category of one, Defendant's guidelines sentence would

be forty-one to fifty-one months. However, if the offense "resulted in substantial financial

hardship to five or more victims," Defendant abused a position of trust, and used sophisticated

means, the offense level would be 26, resulting in a guideline sentence of sixty-three to seventy-

eight months.

The Court calculates the Defendant's total offense level as 22. Given a total offense level

of 22 and a criminal history category of one, the Guidelines suggest a term of imprisonment of

between 41 and 51 months. USSG ch. 5, pt. A. The Guidelines further recommend a term of

supervised release of between two and five years, *id.* § 5D1.2(a)(1); a fine of between $7,500 and

$1,000,000; and payment of the costs of prosecution, *id.* § 5E1.5. Defendant is ineligible for

probation under the Guidelines. *See id.* § 5B1.1.

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor, which requires the Court to evaluate "any pertinent policy

statement . . . issued by the Sentencing Commission," 18 U.S.C. § 3553(a)(5), does not apply.

### F. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted

sentence disparities among defendants with similar records who have been found guilty of

similar conduct." 18 U.S.C. § 3553(a)(6). In considering the other six § 3553(a) factors, the

Court's sentence sufficiently avoids unwarranted sentence disparities.

### G. The Need to Provide Restitution

Finally, the seventh § 3553(a) factor requires the Court to touch upon "the need to

provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7). Defendant agreed,

pursuant to the Plea Agreement, that he is jointly and severally liable with his co-defendant to pay restitution as follows: (i) $263,286.71 to the two victims of the Credit Card Scheme; and (ii) $473,407.50 to the ten victims of the Investment Scheme. Plea Agreement ¶ 2.

## CONCLUSION

A sentence of 51 months of incarceration on each count to run concurrently, 2 years of supervised release, an order of restitution in the amount of $736,694.21, and payment of the $200.00 mandatory assessment is appropriate and comports with the dictates of § 3553. This sentence is consistent with, and is sufficient but not greater than necessary to accomplish, the purposes of § 3553(a)(2).

The Court expressly adopts the factual findings of the Presentence Investigation Report and the first and second Addendums to the Presentence Investigation Report and imposes the special conditions of release proposed by the Probation Department.

**SO ORDERED.**


_ s/WFK _
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE


Dated: April 3, 2018
    Brooklyn, New York

10